5 F.3d 171
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Paul KAPLANSKY, Defendant-Appellant.
 No. 92-3744.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 29, 1993.
Decided Sept. 22, 1993.
 
 Nancy A. Vecchiarelli, Asst. U.S. Atty., Office of U.S. Atty., Cleveland, OH (argued and briefed), for plaintiff-appellee.
 Gerald S. Gold, Orville E. Stifel, II (argued and briefed), Gold, Rotatori, Schwartz & Gibbons, Cleveland, OH, for defendant-appellant.
 Before: MERRITT, Chief Judge; and KEITH and SUHRHEINRICH, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 Defendant Kaplansky appeals his conviction by guilty plea and sentence for violation of the Armed Career Criminal Act, 18 U.S.C. Sec. 922(g)(1). Pursuant to the penalty enhancement provisions of 18 U.S.C. Sec. 924(e), Kaplansky was sentenced to the minimum fifteen years' imprisonment without eligibility for parole. In his plea agreement, Kaplansky reserved the right to appeal the district court's denial of his motion to suppress and any adverse determination relating to the sentencing enhancement provisions of 18 U.S.C. Sec. 924(e). Kaplansky contends that the district court should have granted his motion to suppress because the arresting officers lacked the reasonable suspicion necessary to justify a stop under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). He also claims that the district court erred in examining the actual conduct underlying his prior convictions for the purpose of determining whether those convictions were for "violent felonies" under 18 U.S.C. Sec. 924(e). We affirm the district court's denial of defendant's motion to suppress. We also hold that the district court erred in finding that defendant's prior conviction for attempted kidnapping was a violent felony under the sentencing enhancement statute.
 
 I.
 
 2
 At around 9 o'clock on the evening of January 11, 1992, Debra Richards called the Cuyahoga Falls police department to report the presence of a suspicious van in her apartment parking lot. Richards told the police dispatcher that a man had been in the van watching "the entire time," and that the man in the van "keeps coming around." She called back one minute later to report that the van had followed her fourteen year old daughter "a couple of times" and that that night it had followed her daughter to a friend's house.
 
 
 3
 The police dispatcher radioed all patrol cars in the area that there was "a suspicious male in a blue van, described as a white male with a pony tail and a beard" in the apartment parking lot. Officers Guldman and Curtis, driving separate patrol cars, responded to the broadcast. They arrived at about the same time, approaching from different entrances. As Officer Guldman pulled into the parking lot he noticed a blue van backing out of a parking space. Officer Guldman turned on his lights and pulled his patrol car in front of the van. Officer Curtis approached the van from the other side, and parked behind the van.
 
 
 4
 As Officer Guldman was radioing in the van's license plate, Kaplansky, a white male with a pony tail and beard, exited the van, leaving the driver's side door open. At Officer Guldman's request, Kaplansky produced his driver's license. He told the officer that the license indicated his current address, that he did not know anyone in the area, and that he had driven to the area after an argument with his wife.
 
 
 5
 While Officer Guldman was questioning Kaplansky, Officer Curtis approached the van. He shined his flashlight in the window of the passenger side door and saw what appeared to be the butt of a gun protruding from under the driver's seat. He then walked around to the open driver's side door, shined his flashlight under the driver's seat, and confirmed his suspicion. The officers then arrested Kaplansky for carrying a concealed weapon.
 
 II.
 
 6
 Kaplansky's initial contention is that the district court erred in holding that the police had reasonable suspicion to justify a "Terry stop." The government responds that (1) defendant waived this argument by failing to raise it in the district court, (2) the police did have reasonable suspicion justifying a Terry stop, and (3) the police encounter with Kaplansky was not a "stop" or "seizure" under the Fourth Amendment. Because we find that the police had reasonable suspicion under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), we do not address the other arguments raised by the government.
 
 
 7
 Terry v. Ohio examines the circumstances under which a police officer may make an investigatory stop of a suspicious individual short of arrest. Investigating officers must be aware of specific, articulable facts creating a reasonable suspicion of criminal activity before an investigatory stop is allowed. Terry, 392 U.S. at 21, 88 S.Ct. at 1879; United States v. Hardnett, 804 F.2d 353, 356 (6th Cir.1986), cert. denied, 479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171 (1987). In a case such as this one, where officers are told to investigate a situation without being told all of the facts justifying investigation, the court must look beyond the specific facts known to the officers on the scene to the facts known to the dispatcher. See United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). It was permissible for Officers Guldman and Curtis to rely upon the dispatcher's conclusion that Kaplansky was "suspicious" without inquiring into the basis of the dispatcher's knowledge. See id. at 231, 105 S.Ct. at 681.
 
 
 8
 The dispatcher knew of sufficient specific, articulable facts to justify ordering an investigatory stop of Kaplansky. Debra Richards reported that Kaplansky kept coming around the apartment complex, apparently just to sit in his van and "watch." When Ms. Richards called the dispatcher the second time, she reported that the van had followed her fourteen year old daughter more than once, and that it had followed her daughter earlier that night to a friend's house. Kaplansky contends that this behavior is consistent with a number of innocent explanations: that he was a private investigator, a process server, a repossession agent, a jealous boyfriend, or someone cooling off from an argument with his wife.[1]
 
 
 9
 Most of these explanations are completely incompatible with a man, over thirty years old with a full beard, repeatedly following a fourteen year old girl around her neighborhood in a van. Even if the defendant could assert a plausible innocent explanation for his behavior, this would not preclude the police from investigating the possibility that defendant was planning some type of criminal activity. As the defendant concedes, the police need not rule out every innocent explanation for suspicious behavior in order to justify an investigatory stop. E.g., United States v. Thomas, 863 F.2d 622, 627 (9th Cir.1988).
 
 
 10
 We conclude that the police stop was justified by reasonable suspicion under Terry v. Ohio, and therefore affirm the district court's denial of defendant's motion to suppress and its entry of a judgment of conviction.
 
 III.
 
 11
 Kaplansky also appeals the district court's holding that he is subject to the sentencing enhancement provisions of 18 U.S.C. Sec. 924(e). Section 924(e)(1) provides that anyone who violates Sec. 922(g) and who had three prior convictions for "a violent felony or a serious drug offense" shall receive a minimum sentence of fifteen years without eligibility for parole. The sentencing court found that Kaplansky had three prior convictions for violent felonies. The term "violent felony" is defined in Sec. 924(e)(2)(B):
 
 
 12
 (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
 
 
 13
 (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
 
 
 14
 (ii) is a burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
 
 
 15
 Kaplansky concedes that his prior conviction for rape qualifies as a "violent felony." He argues that his prior conviction for attempted kidnapping is not a "violent felony" because force is not an element of the crime, and the offense does not of necessity pose a risk of serious physical injury to another. He also contends that his prior conviction for gross sexual imposition is not a "violent felony" because the force element of the offense is de minimus, and not the kind of force required by the sentencing statute. Because we conclude that defendant's prior conviction for attempted kidnapping is not a "violent felony" under Sec. 924(e), we do not address Kaplansky's argument regarding his gross sexual imposition conviction.
 
 
 16
 The primary issue before this court is whether the sentencing court erred in examining the actual conduct underlying Kaplansky's prior convictions. The court held that, applying the "categorical approach" whereby the court examines only the statute of conviction, Kaplansky's attempted kidnapping conviction does not fit the statutory definition of a "violent felony." The court did, however, examine the conduct underlying the conviction, and concluded that it qualified as a "violent felony" under both Sec. 924(e)(2)(B)(i) ("use of physical force") and Sec. 924(e)(2)(B)(ii) ("otherwise involves conduct that presents a serious potential risk of physical injury").
 
 
 17
 Applying the Supreme Court's analysis of the statute in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), we hold that the attempted kidnapping conviction is not a "violent felony" because: (1) the "categorical approach" dictates a finding that use of force was not an element of the offense and that the crime did not present a serious potential risk of physical injury; (2) no exception to the categorical approach applies in this case to an analysis under Sec. 924(e)(2)(B)(i); and (3) no exception to the categorical approach applies in this case to an analysis under Sec. 924(e)(2)(B)(ii).
 
 A.
 
 18
 This court has held that "when determining whether a prior conviction is a 'violent felony,' for purposes of Sec. 924(e), reference is made to the statute under which the conviction was obtained rather than the actual conduct involved." United States v. Lane, 909 F.2d 895, 901 (6th Cir.1990), cert. denied, 498 U.S. 1093, 111 S.Ct. 977, 112 L.Ed.2d 1062 (1991). The Supreme Court has likewise held that the statute "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." Taylor, 495 U.S. at 602, 110 S.Ct. at 2160. The district court found, and we agree, that under this "categorical approach" Kaplansky's conviction for attempted kidnapping is not a violent felony under Sec. 924(e).
 
 
 19
 The Ohio kidnapping statute, Ohio Rev.Code Sec. 2905.01, defines kidnapping in relevant part as follows:
 
 
 20
 (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where he is found or restrain him of his liberty, for any of the following purposes:
 
 
 21
 (1) To hold for ransom, or as a shield or hostage;
 
 
 22
 (2) To facilitate the commission of any felony or flight thereafter;
 
 
 23
 (3) To terrorize, or to inflict serious physical harm on the victim or another;
 
 
 24
 (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against his will;
 
 
 25
 (5) To hinder, impede, or obstruct a function of government, or to force any action or concession on the part of governmental authority.
 
 
 26
 Section 924(e)(2)(B)(i) defines violent felony as any crime which has as an element "the use, attempted use, or threatened use of physical force." Because the Ohio kidnapping statute allows conviction based upon "force, threat, or deception," it does not satisfy Sec. 924(e)(2)(B)(i). The sentencing enhancement statute also defines a violent felony as one which "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. Sec. 924(e)(2)(B)(ii). The sentencing court found, and we agree, that under Ohio's kidnapping statute, attempted kidnapping by deception for statutory purpose (2) or (5) does not necessarily present "a serious potential risk of physical injury to another."
 
 
 27
 The government argues that attempted kidnapping by deception always poses a serious risk of physical injury because the victim could discover the deception, try to resist, and then be in danger of physical harm. This argument is unpersuasive. It relies upon a "speculative chain of events," which, while possible, does not justify categorizing the offense as a "violent felony." Cf. United States v. Johnson, 953 F.2d 110, 113, 115 (4th Cir.1992) (holding that possession of a firearm by a felon is not a "crime of violence" under the Sentencing Guidelines, U.S.S.G. Sec. 4B1.2, which "provides a definition of 'crime of violence' identical to" 18 U.S.C. Sec. 924(e)). Under the government's analysis almost any crime poses a serious threat of physical injury: the victim could discover the crime, try to stop it or threaten to report it, and then be in danger of physical harm. As the First Circuit pointed out in United States v. Doe, 960 F.2d 221, 225 (1st Cir.1992), a broad reading of the statute focusing on the "risk of direct future harm" would "bring within the statute's scope a host of other crimes that do not seem to belong there." We decline to hold that attempted kidnapping by deception for the purpose of committing a non-violent felony or obstructing a function of government "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. Sec. 924(e)(2)(B)(ii).
 
 
 28
 Applying the categorical approach, then, Kaplansky's conviction for attempted kidnapping is not a "violent felony" under either Sec. 924(e)(2)(B)(i) or Sec. 924(e)(2)(B)(ii).
 
 B.
 
 29
 The sentencing court did not, however, restrict itself to the categorical approach. The court also examined the specific facts underlying the conviction. Kaplansky's guilty plea in the kidnapping proceeding limited the court to consideration of the indictment, the pre-sentence report, and live testimony from the victim and from Kaplansky's defense counsel in the attempted kidnapping case. Based upon the evidence presented, the court concluded that Kaplansky's actual conduct justified a finding that his attempted kidnapping conviction was a "violent felony." We address first the court's inquiry into the underlying conduct and subsequent conclusion that the crime was committed by "the use, attempted use, or threatened use of physical force." 18 U.S.C. Sec. 924(e)(2)(B)(i).
 
 
 30
 The sentencing court held that its inquiry into Kaplansky's actual conduct was justified by the Taylor exception to the use of the categorical approach. Taylor, 495 U.S. at 602, 110 S.Ct. at 2160. In Taylor, the Supreme Court considered whether a burglary conviction, obtained under a state statute that defined burglary more broadly than the generic definition intended by Congress, was a "burglary" under the sentencing enhancement statute. The Court held that when Congress included "burglary" as a "violent felony," it meant generic burglary, which is limited to entry into a building or structure. Id. at 598-99, 110 S.Ct. at 2158. The Court further held that:
 
 
 31
 [I]n a State whose burglary statutes include entry of an automobile as well as a building, if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement.
 
 
 32
 Id. at 602, 110 S.Ct. at 2160. The sentencing court held that this exception to the use of the categorical approach authorized the court to hear testimony and examine the pre-sentence report in order to determine the actual conduct underlying the conviction.
 
 
 33
 The Taylor exception is not so broad. The Supreme Court in Taylor held that the legislative history of Sec. 924(e) indicates that Congress did not intend for sentencing courts to "engage in an elaborate factfinding process regarding the defendant's prior offenses." Id. at 601, 110 S.Ct. at 2159. The Court recognized that "the practical difficulties and potential unfairness of a factual approach are daunting." Id. This case well illustrates the practical difficulties and potential unfairness.
 
 
 34
 The sentencing court was forced to address not only the government's argument that the conduct underlying Kaplansky's attempted kidnapping conviction involved the use or threatened use of physical force, but also Kaplansky's contention that the underlying conduct could only support a conviction for simple assault, a misdemeanor under Ohio law. Gerald Gold, Kaplansky's defense counsel at the attempted kidnapping proceeding, testified that Kaplansky pled guilty to attempted kidnapping as part of a plea agreement under which the prosecution agreed to concurrent sentences for rape, gross sexual imposition, and attempted kidnapping convictions. The defense did not, therefore, seriously consider whether Kaplansky's conduct would have supported an attempted kidnapping conviction. The sentencing court rejected Kaplansky's argument, stating that "it appears to the Court that ample evidence existed to support a conviction of the crime of attempted kidnapping. Moreover, the defendant entered a plea of guilty to that count."
 
 
 35
 The sentencing court in this case conducted the kind of trial within a trial that Congress, and the Supreme Court in Taylor, sought to avoid. The Taylor exception applies only in "a narrow range of cases where a jury was actually required to find all the elements" of a violent felony. Id. at 602, 110 S.Ct. at 2160 (emphasis added). The Ohio kidnapping statute is analogous to a broad state burglary statute like that considered in Taylor in that a conviction may be obtained by proof of an element covered by Sec. 924(e) or by proof of an alternative element not covered by the statute. The Taylor Court held that in this situation the court may look to documents such as the "indictment or information and jury instructions" to determine whether "the jury necessarily had to find" the element covered by the sentencing statute. Id. (emphasis added).
 
 
 36
 The testimony of the victim and the pre-sentence report do not meet the high standard set in Taylor. Neither indicate that, had Kaplansky not pled guilty, a jury would necessarily have had to find that he committed the offense by force or threat of force, and not by deception. If the indictment had charged Kaplansky only with attempted kidnapping by force or threat of force, the Taylor standard might have been met. The indictment, however, charged Kaplansky with an
 
 
 37
 attempt by force, threat, or deception removed [sic] Colleen Lalley from the place where she was found or restrained her or her liberty for the purpose of facilitating the commission of a felony or the flight thereafter and/or terrorizing, or inflicting serious physical harm on Colleen Lalley, and/or engaging in sexual activity with Colleen Lalley against her will and failed to release the victim in a safe place unharmed.
 
 
 38
 (emphasis added). As the district court found, the text of the statute and the text of the indictment do not establish that Kaplansky committed the offense by "the use, attempted use, or threatened use of physical force." 18 U.S.C. Sec. 924(e)(2)(B)(i).
 
 C.
 
 39
 The government contends that even if the sentencing court was precluded from examining the conduct underlying the attempted kidnapping conviction for the purpose of determining whether the offense was committed by force under Sec. 924(e)(2)(B)(i), the court could examine underlying conduct for the purpose of determining whether the offense "otherwise involves conduct that presents a serious potential risk of physical injury to another" under Sec. 924(e)(2)(B)(ii).
 
 
 40
 This court rejected the same argument when made on behalf of the defendant in Lane, 909 F.2d at 901: "[Defendant] asserts that the language of the 'otherwise' clause clearly requires consideration of the underlying conduct because the clause applies only to crimes that 'involve[ ] conduct that presents a serious potential risk of physical injury to another.' We reject [defendant's] argument." (citation omitted). The Supreme Court has also rejected the argument that Sec. 924(e)(2)(B)(ii) authorizes a more searching inquiry into the actual conduct underlying a prior conviction than does Sec. 924(e)(2)(B)(i). "[T]he only plausible interpretation of Sec. 924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." Taylor, 495 U.S. at 602, 110 S.Ct. at 2160 (footnote omitted).
 
 IV.
 
 41
 For the foregoing reasons we AFFIRM the judgment of conviction, VACATE the sentence, and REMAND for resentencing consistent with this opinion.
 
 
 42
 SUHRHEINRICH, Circuit Judge, dissenting.
 
 
 43
 I agree with the majority that the Ohio kidnapping statute does not satisfy 18 U.S.C. Sec. 924(e)(2)(B)(i). I part ways with the majority, however, in its conclusion that attempted kidnapping by deception for statutory purpose (2) or (5) "does not necessarily present a 'serious potential risk of physical injury to another.' " The majority fails to note although subsection (i) of Sec. 924(e)(2)(B) requires force as an actual element, subsection (ii) speaks only of conduct that presents a "serious potential risk." In my view, the "potential" for physical injury to another is invariably present in any crime against another person inducing to do something against their will (whether they know it at the time or not). See United States v. Lonczak, 993 F.2d 180 (9th Cir.1993) (defendant's conduct in either maliciously, forcibly, or fraudulently taking or enticing away child victim, with intent to detain or conceal child under California law by its nature presented a serious potential risk of physical injury to another under U.S.S.G. Sec. 4B1.2(ii)); United States v. Patino, 962 F.2d 263 (2d Cir.) ("[t]hat the crime of kidnapping involves the threatened use of physical force against a person and is thus a crime of violence under this statute [18 U.S.C. Sec. 925(c)(3) ] cannot be questioned."), cert. denied, --- U.S. ----, 113 S.Ct. 354, 121 L.Ed.2d 268 (1992); United States v. Sherbondy, 865 F.2d 996 (9th Cir.1988) (dicta) (although kidnapping does not have violence as a necessary element, it nevertheless entails a "serious potential risk of physical injury" to the victim, making the offense a 'violent felony' under Sec. 924(e)(2)(B)(ii)). Thus, I would hold that defendant's prior conviction for attempted kidnapping under Ohio Revised Code Sec. 2905.01 constitutes a "violent felony" for purposes of Sec. 924(e)(2)(B)(ii).
 
 
 
 [1]
 Defendant further contends that his behavior could be construed as innocent "girl watching," citing Frank Loesser's immortal number "Standing on the Corner" from Most Happy Fella (1956) ("Brother, you can't go to jail for what you're thinking/Or for the 'Ooooh' look in your eye."). Research indicates, however, that Mr. Loesser's thoughts on the innocence of "girl watching" have been limited, if not directly overruled, by more recent Broadway musicals. See, e.g., Stephen Sondheim, "Pretty Lady," Pacific Overtures (1976), and accompanying scene