UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Paul KAPLANSKY,
Defendant–Appellant.

No. 92–3744.

United States Court of Appeals,
Sixth Circuit.

Reargued June 15, 1994.

Decided Dec. 2, 1994.

§ 2905.01, which provides that the crime of kidnapping may occur by "force, threat, or deception," *see* Ohio Rev.Code Ann. § 2905.01 (Anderson 1993), satisfies either prong of the statute and is therefore a predicate crime under the ACCA.

Nancy A. Vecchiarelli, Asst. U.S. Atty. (briefed), Cleveland, OH, Sean Connelly (argued and briefed), U.S. Dept. of Justice, Criminal Div., Washington, DC, for plaintiff-appellee.

Gerald S. Gold, Orville E. Stifel, II (argued and briefed), Gold, Rotatori, Schwartz & Gibbons, Cleveland, OH, for defendant-appellant.

Before: MERRITT, Chief Judge, and KEITH, KENNEDY, MARTIN, JONES, MILBURN, GUY, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, and DAUGHTREY, Circuit Judges.

SUHRHEINRICH, J., delivered the opinion of the court, in which KEITH, JONES, MILBURN, GUY, BOGGS, NORRIS, SILER, BATCHELDER, and DAUGHTREY, JJ., joined. NELSON, J. (p. 328), delivered a separate concurring opinion in which KENNEDY and RYAN, JJ., joined. MERRITT, C.J. (pp. 328–30), delivered a separate dissenting opinion, in which MARTIN, J., joined, with MARTIN, J. (pp. 330–31), also delivering a separate dissenting opinion.

SUHRHEINRICH, Circuit Judge.

The Armed Career Criminal Act, 18 U.S.C. § 924(e) (the "ACCA"), provides that a felon in possession of a firearm who has been previously convicted of three or more "violent felonies" is subject to an enhanced sentence. "Violent felony" is defined in § 924(e)(2)(B) as any crime punishable by imprisonment for a term exceeding one year that "has as an element the use, attempted use, or threatened use of physical force," or "involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B)(i), (ii). The principal issue before the en banc court is whether attempted kidnapping under Ohio Rev.Code Ann.

**I.**

Defendant Robert Paul Kaplansky entered a conditional plea of guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court, citing defendant's three prior convictions for rape, gross sexual imposition, and attempted kidnapping, imposed the mandatory fifteen years imprisonment without parole under the penalty enhancement provisions of 18 U.S.C. § 924(e). Defendant conceded at sentencing that his prior conviction for rape qualified as a "violent felony," but argued that his prior conviction for gross sexual imposition was not, because the language of the statute is such that the crime can be committed without the use of force. He made a similar argument regarding the attempted kidnapping conviction because of the Ohio statute's inclusion of deception as one of the means by which the crime of kidnapping may be committed.

The district court held that although neither conviction qualified as a "violent felony" under a "categorical approach," the actual conduct underlying each conviction demonstrated that each prior crime did in fact involve force and otherwise presented a serious risk of injury to the victim. In reaching the latter conclusion, the court relied on the underlying facts set forth in the presentence report as well as the testimony of the victims, which was given at the sentencing hearing. Defendant exercised his reserved right to appeal any adverse sentencing determinations and the district court's denial of his motion to suppress.

The original three-member panel vacated defendant's sentence, holding that the lower court erred in examining the actual conduct underlying Kaplansky's convictions, but otherwise agreed with the district court's conclusion that the statutory possibility of kidnapping by deception for the purpose of committing a nonviolent felony precluded defen-

dant's conviction from being classified categorically as a "violent felony" under either clause of § 924(e)(2)(B). It therefore did not address defendant's argument regarding his gross sexual imposition conviction. *United States v. Kaplansky*, No. 94–3744, 1993 WL 366362 (6th Cir. Sept. 22, 1993) (vacated). The dissent felt that all kidnappings by deception, even ones for the purpose of committing a nonviolent felony or obstructing a function of government, invariably present a "potential" for physical injury. A majority of the court voted for rehearing en banc, thereby vacating the previous opinion and judgment of the original panel. *United States v. Kaplansky*, 5 F.3d 177 (6th Cir.1993).

## II.

As noted above, § 924(e) mandates that a person who violates 18 U.S.C. § 922(g), and who has three previous convictions for "violent felonies," shall be subject to an enhanced sentence. The statute defines "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year ... that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another....

18 U.S.C.A. § 924(e)(2)(B)(West 1994). The statute targets so-called "career offenders," those who by their very nature "present at least a potential threat of harm to persons." *Taylor v. United States*, 495 U.S. 575, 587–88, 110 S.Ct. 2143, 2152, 109 L.Ed.2d 607 (1990).

The Supreme Court has stated that in deciding whether a crime is a "violent felony"

under either subparagraph of § 924(e)(2)(B), sentencing courts should look to the statutory definition of the crime charged, rather than the actual facts of the individual's prior conviction. *Taylor*, 495 U.S. at 600–02, 110 S.Ct. at 2159–60. *See also United States v. Lane*, 909 F.2d 895, 901 (6th Cir.1990), *cert. denied*, 498 U.S. 1093, 111 S.Ct. 977, 112 L.Ed.2d 1062 (1991). This "categorical approach," which is consistent with the statutory language as well as the legislative history, is designed to avoid "the practical difficulties and potential unfairness of a factual approach" to each prior conviction. *Taylor*, 495 U.S. at 601, 110 S.Ct. at 2159; *Lane*, 909 F.2d at 901.

The Supreme Court also recognized an exception to the categorical approach in "a narrow range of cases where a jury was actually required to find all the elements" of the violent felony. *Taylor*, 495 U.S. at 602, 110 S.Ct. at 2160. In such situations, the sentencing court may look to "the charging paper and jury instructions." *Id.*[1] When the defendant's conviction is by way of guilty plea, it is appropriate under *Taylor* to look to the indictment and guilty plea. *United States v. Barney*, 955 F.2d 635 (10th Cir. 1992); *United States v. Sweeten*, 933 F.2d 765 (9th Cir.1991)(per curiam); *United States v. Garza*, 921 F.2d 59, 61 (5th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 91, 116 L.Ed.2d 63 (1991); *United States v. Cornelius*, 931 F.2d 490, 494 (8th Cir.1991); *United States v. Payton*, 918 F.2d 54 (8th Cir.1990); *United States v. Gallman*, 907 F.2d 639, 645 n. 7 (7th Cir.1990), *cert. denied*, 499 U.S. 908, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991). *See United States v. Bentley*, 29 F.3d 1073, 1077–78 (6th Cir.) (court examined language of indictment to ascertain whether defendant pled guilty to elements of generic burglary where state statute proscribed broader range

---

1. In *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court considered whether the defendant's prior conviction for second-degree burglary under Missouri law qualified as a "burglary" under § 924(e)(2)(B)(ii). The Court held first that the federal statute refers not to common law burglary, but rather "generic burglary," which includes "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599, 110 S.Ct. at 2158. The Court also observed that where the state statute is broader than the generic definition, such as burglary statutes which include entry of an automobile as well as a building, "if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement." *Id.* at 602, 110 S.Ct. at 2160.

of conduct), *cert. denied,* —— U.S. ——, 115 S.Ct. 604, 130 L.Ed.2d 515 (1994).

## III.

The government concedes that the district court erred in looking at the actual facts of the prior felony convictions. Despite the district court's belief, the *Taylor* exception stops short of embracing the actual conduct underlying a prior conviction. *Taylor,* 495 U.S. at 601, 110 S.Ct. at 2159 (legislative history of § 924(e) reflects that Congress did not intend for sentencing courts to "engage in an elaborate factfinding process regarding the defendant's prior offenses"); *Payton,* 918 F.2d at 56 (district court erred under *Taylor* in looking beyond state statute, charging paper and jury instructions to police report to determine nature of conduct leading to conviction). Rather, the government maintains that because kidnapping is a crime directed at the individual personally, it categorically presents a serious potential risk of physical injury. The government also argues that a sentencing court could properly conclude from the indictment, plea and judgment that defendant physically harmed Colleen Lally. We consider the application of categorical approach to Ohio Rev.Code Ann. § 2905.01 first.

### A.

The government does not argue that § 2905.01 has as a necessary element the use, attempted use or threatened use of force. We therefore examine the statute exclusively for language that requires conduct that presents a serious risk of physical injury to another. The statute provides in relevant part:

(A) No person, by *force, threat, or deception,* or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where he is found or restrain him of his liberty, for any of the following purposes:

(1) To hold for ransom, or as a shield or hostage;

(2) To facilitate the commission of any felony or flight thereafter;

(3) To terrorize, or to inflict serious physical harm on the victim or another;

(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against his will;

(5) To hinder, impede, or obstruct a function of government, or to force any action or concession on the part of governmental authority.

Ohio Rev.Code Ann. § 2905.01 (emphasis added). Defendant argues, and both the district court and the original panel agreed, that because an attempted kidnapping by deception for statutory purpose (2) or (5) does not necessarily present "a serious potential risk of physical injury to another," Kaplansky's conviction for attempted kidnapping could not be classified as a violent felony under § 924(e)(2)(B)(ii) under the categorical approach.

We think this view overlooks the word "potential" in the "otherwise" provision of clause (ii), and also misunderstands the nature of the categorical approach. As the Tenth Circuit recently observed:

It is worth emphasizing that § 924(e)(2)(B)(ii) only requires that there be a serious "potential" risk of injury; it does not require proof that any actual injury occurred, nor should it under a categorical approach. We agree with the position of the United States that it is plausible, and indeed even likely, that a nonconsensual, unlawful kidnapping under the Missouri statute could potentially result in physical injury to an involved party.

*United States v. Phelps,* 17 F.3d 1334, 1342 (10th Cir.) (conviction under Missouri kidnapping statute would be used as predicate offense, even though physical force is not element of crime, because it is plausible that physical injury could potentially result), *cert. denied,* —— U.S. ——, 115 S.Ct. 135, 130 L.Ed.2d 77 (1994). The *Phelps* court found persuasive dicta from a Ninth Circuit decision, *United States v. Sherbondy,* 865 F.2d 996, 1009 (9th Cir.1988). In *Sherbondy,* the court, anticipating the categorical approach later adopted by the Supreme Court, *see Taylor,* 495 U.S. at 600, 110 S.Ct. at 2159 (citing *Sherbondy* with approval), observed that clause (ii) supplements the scope of the

term "violent felony" through its final "otherwise" provision, by reaching other statutory and common law offenses not covered by clause (i) that generically involve a similarly serious risk. To illustrate, the court noted that

> one of the ways the Model Penal Code defines kidnapping is "unlawfully remov[ing] another from his place of residence or business, or a substantial distance from where he is found ..." Model Penal Code, Section 212.1. Violence is not an element of kidnapping defined this way, for removal of a person through trickery or deceit can be as unlawful as abduction at gunpoint. Thus, subsection (i) would not apply to a conviction under the kidnapping statute. Nevertheless, kidnapping entails a "serious potential risk of physical injury" to the victim, making the offense a "violent felony" under subsection (ii).

*Sherbondy,* 865 F.2d at 1009. *See also United States v. Lonczak,* 993 F.2d 180 (9th Cir. 1993)(child stealing under California law qualified as a "crime of violence" for purposes of determining career offender status under sentencing guideline § 4B1.2(1)(ii) (an analogous provision to § 924(e)(2)(B)), though the crime can be achieved by fraud or abduction without force, because it "offers the same serious potential risk of physical injury to the stolen child as kidnapping does to a kidnapped person"; adopting *Sherbondy* dicta); *United States v. Patino,* 962 F.2d 263 (2d Cir.)(conspiracy to kidnap qualifies as "crime of violence" under § 924(c), because kidnapping is unquestionably a crime of violence; and when a conspiracy exists to commit a crime of violence, the conspiracy itself poses a "substantial risk" of violence), *cert. denied,* —— U.S. ——, 113 S.Ct. 354, 121 L.Ed.2d 268 (1992).

■ As the foregoing cases recognize, the essence of kidnapping is requiring another to do something against his or her will; and because physical force or restraint is usually the best way to overbear the will of another, physical force or threat of force is a latent, but more often actual, companion of the coercive element. That deception may be used to effect the kidnapping does not erase the ever-present possibility that the victim may figure out what's really going on and decide to resist, in turn requiring the perpetrator to resort to actual physical restraint if he is to carry out the criminal plan. Thus, the potential for violence against the victim is an inherent aspect of the crime of kidnapping, a fact which the Ohio legislature recognized. *See* Commission Committee Comment to H 511, Ohio Rev.Code Ann. § 2905.01 (kidnapping is "the most serious offense among the abduction offenses in the [Ohio] code") and Committee Comment to Ohio Rev.Code Ann. § 2905.02 (lesser included offenses, such as abduction and unlawful restraint, are "distinguished mainly by the lesser degree of potential harm to the victim"). It is for this reason that the dissent's argument is unpersuasive. Just because actual force or injury may not surface in a particular instance of kidnapping (i.e., in those instances initiated by deception) does not mean that it is not an undercurrent of the offense having the serious *potential* of rising to the surface.

■ This reasoning is consistent with the focus of the categorical approach, where we look to the nature of the offense rather than individualized facts to determine whether it qualifies as a "violent felony." Because we think kidnapping is the "type" of offense where the risk of physical injury to the victim is invariably present, we conclude that a crime committed under Ohio Rev.Code Ann. § 2905.01, whether by force, threat of force, or deception, categorically qualifies as a "violent felony" under § 924(e)(2)(B)(ii). Furthermore, merely because defendant did not complete the kidnapping does not diminish the potential risk of injury to the victim. *Lane,* 909 F.2d at 903 (attempted burglary under Ohio law constituted violent felony; fact that defendant didn't complete offense did not diminish serious potential risk of injury arising from the attempt); *United States v. Fish,* 928 F.2d 185, 188 (6th Cir.)(attempted breaking and entering under Michigan law qualified as violent felony under "otherwise" clause; relying on *Lane* ), *cert. denied,* —— U.S. ——, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991). We therefore hold that defendant's attempted kidnapping conviction was properly used to enhance his sentence.

## B.

The government's alternative position is that defendant's particular conviction for attempted kidnapping qualifies as a predicate crime under the exception in *Taylor* for cases where the jury necessarily found all the elements of a violent felony. The indictment underlying the conviction in our case alleges that on or about September 27, 1979, defendant committed an act in violation of Ohio Rev.Code Ann. §§ 2905.01 and 2923.02 when he

> did attempt by force, threat or deception removed [sic] Colleen Lally from the place where she was found or restrained her of her liberty for the purpose of facilitating the commission of a felony or the flight thereafter and/or terrorizing, or inflicting serious physical harm on Colleen Lally, and/or engaging in sexual activity with Colleen Lally against her will and failed to release the victim in a safe place unharmed.

In support of its argument that defendant's attempted kidnapping constituted a "violent felony," the government focuses on the fact that the indictment here alleged not only that defendant attempted a kidnapping but also that he "*failed to release the victim in a safe place unharmed.*" The government maintains that defendant's plea of guilty includes admitting this element and, at a minimum, establishes that the crime involved a risk of injury to the victim.

Defendant counters that causing harm to the victim is not an element of the crime of kidnapping under Ohio law, and this allegation is mere surplusage which Kaplansky did not admit when he pled guilty. *See Bridges v. United States,* 346 U.S. 209, 222–23, 73 S.Ct. 1055, 1063, 97 L.Ed. 1557 (1953)(insertion of surplus words in indictment does not change nature of the offense); *United States v. Levinson,* 405 F.2d 971, 978 (6th Cir. 1968)(same), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1746, 23 L.Ed.2d 219 (1969). Granted, under Ohio law the issue of whether defendant "releases the victim in a safe place unharmed" is a matter of affirmative defense and not an element of the crime. *State v. Leslie,* 14 Ohio App.3d 343, 471 N.E.2d 503, 506 (1984). Defendant's contention is una-

vailing nonetheless for two reasons. First, by pleading guilty to the state law offense, Kaplansky has admitted to all the well-pleaded facts in the indictment. *Department of Liquor Control v. Santucci,* 17 Ohio St.2d 69, 246 N.E.2d 549, 551 (1969); *Click v. Eckle,* 174 Ohio St. 88, 186 N.E.2d 731, 733–34 (1962); *Rodriguez v. Sacks,* 173 Ohio St. 456, 184 N.E.2d 93, 94 (1962).

Second, the cited language cannot be considered surplusage, because it is material to the crime charged. Under Ohio law, "[a]n attempt to commit an aggravated felony of the first or second degree is an aggravated felony of the next lesser aggravated degree than the aggravated felony attempted." Ohio Rev.Code Ann. § 2923.02(E). In other words, the fact that defendant was convicted of a second degree attempt means that he attempted to commit first-degree kidnapping. *See* § 2905.01(C)("Whoever violates this section is guilty of kidnapping, an aggravated felony of the first degree. If the offender releases the victim in a safe place unharmed, kidnapping is an aggravated felony of the second degree."). Had this fact not been material, Kaplansky would have been charged with another crime. For example, if defendant had released the victim in a safe place unharmed, a second degree kidnapping offense, he would have been charged with third degree attempted kidnapping. By pleading guilty to this indictment, defendant has also necessarily admitted that he attempted to use some degree of actual physical force in restraining Colleen Lally. Thus, in our view, Kaplansky's conviction satisfies both clauses of § 924(e)(2)(B) under the *Taylor* exception.

## IV.

Because of its determination that the attempted kidnapping conviction was not a predicate crime under the ACCA, the original panel had no reason to consider defendant's challenge to the district court's ruling that the gross sexual imposition conviction was also a "violent felony." The district court based its conclusion on the text of the indictment and the testimony of the victim. Although, as already stated, consideration of

the victim's testimony was improper, we agree with the district court that the offense may be considered a violent felony under the *Taylor* exception because the indictment to which defendant pled guilty unequivocally states that defendant "unlawfully and purposely had sexual contact with Vivian Smith not his spouse by compelling such person to submit *by force or threat of force.*" (Emphasis added.) [2] Thus, defendant's prior conviction for gross sexual imposition under Ohio Rev.Code Ann. § 2907.05 is a "violent felony" under clause (i) of § 924(e)(2)(B), and qualifies as the third prior conviction for a "violent felony" under the federal statute.

### V.

Finally, we note that defendant's challenge to the district court's denial of his motion to suppress, which was not the focus of the en banc court, remains unresolved. Finding no reason to revisit that question, however, we hereby adopt that portion of the original panel's decision as set out in the unpublished appendix to this opinion.

### VI.

For the reasons stated herein, the judgment of the district court is AFFIRMED. The judgment of conviction is AFFIRMED; and the sentence is AFFIRMED, but for reasons other than those provided by the district court.

### APPENDIX

PER CURIAM.

In this appendix, we hereby address the remaining issue raised by this appeal. Because Kaplansky's contention that the district court erred in holding that the police had reasonable suspicion to justify a *"Terry* stop" was thoroughly covered in the original panel decision by Judge Merritt, we hereby adopt it in its entirety here.

**"I.**

At around 9 o'clock on the evening of January 11, 1992, Debra Richards called the Cuyahoga Falls police department to report the presence of a suspicious van in her apartment parking lot. Richards told the police dispatcher that a man had been in the van watching 'the entire time,' and that the man in the van 'keeps coming around.' She called back one minute later to report that the van had followed her fourteen year old daughter 'a couple of times' and that that night it had followed her daughter to a friend's house.

The police dispatcher radioed all patrol cars in the area that there was 'a suspicious male in a blue van, described as a white male with a pony tail and a beard' in the apartment parking lot. Officers Guldman and Curtis, driving separate patrol cars, responded to the broadcast. They arrived at about the same time, approaching from different entrances. As Officer Guldman pulled into the parking lot he noticed a blue van backing out of a parking space. Officer Guldman turned on his lights and pulled his patrol car in front of the van. Officer Curtis approached the van from the other side, and parked behind the van.

As Officer Guldman was radioing in the van's license plate, Kaplansky, a white male with a pony tail and beard, exited the van, leaving the driver's side door open. At Officer Guldman's request, Kaplansky produced his driver's license. He told the officer that the license indicated his current address, that he did not know anyone in the area, and that he had driven to the area after an argument with his wife.

While Officer Guldman was questioning Kaplansky, Officer Curtis approached the van. He shined his flashlight in the window of the passenger side door and saw what appeared to be the butt of a gun

---

**2.** The indictment charging gross sexual imposition reads as follows:

The Jurors of the Grand Jury of the State of Ohio, within and for the body of the County aforesaid, on their oaths, IN THE NAME AND BY THE AUTHORITY OF THE STATE OF OHIO, Do find and present, that the above named Defendant(s), on or about the date of the offense set forth above, in the County of Cuyahoga, unlawfully and purposely had sexual contact with Vivian Smith not his spouse by compelling such person to submit by force or threat of force.

protruding from under the driver's seat. He then walked around to the open driver's side door, shined his flashlight under the driver's seat, and confirmed his suspicion. The officers then arrested Kaplansky for carrying a concealed weapon.

## II.

Kaplansky's initial contention is that the district court erred in holding that the police had reasonable suspicion to justify a 'Terry stop.' The government responds that (1) defendant waived this argument by failing to raise it in the district court, (2) the police did have reasonable suspicion justifying a Terry stop, and (3) the police encounter with Kaplansky was not a 'stop' or 'seizure' under the Fourth Amendment. Because we find that the police had reasonable suspicion under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), we do not address the other arguments raised by the government.

Terry v. Ohio examines the circumstances under which a police officer may make an investigatory stop of a suspicious individual short of arrest. Investigating officers must be aware of specific, articulable facts creating a reasonable suspicion of criminal activity before an investigatory stop is allowed. Terry, 392 U.S. at 21, 88 S.Ct. at 1879; United States v. Hardnett, 804 F.2d 353, 356 (6th Cir.1986), cert. denied, 479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171 (1987). In a case such as this one, where officers are told to investigate a situation without being told all of the facts justifying investigation, the court must look beyond the specific facts known to the officers on the scene to the facts known to the dispatcher. See United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). It was permissible for Officers Guldman and Curtis to rely upon the dispatcher's conclusion that Kaplansky was 'suspicious' without inquiring into the basis of the dispatcher's knowledge. See id. at 231, 105 S.Ct. at 681.

The dispatcher knew of sufficient specific, articulable facts to justify ordering an investigatory stop of Kaplansky. Debra Richards reported that Kaplansky kept coming around the apartment complex, apparently just to sit in his van and 'watch.' When Ms. Richards called the dispatcher the second time, she reported that the van had followed her fourteen year old daughter more than once, and that it had followed her daughter earlier that night to a friend's house. Kaplansky contends that this behavior is consistent with a number of innocent explanations: that he was a private investigator, a process server, a repossession agent, a jealous boyfriend, or someone cooling off from an argument with his wife.[1]

Most of these explanations are completely incompatible with a man, over thirty years old with a full beard, repeatedly following a fourteen year old girl around her neighborhood in a van. Even if the defendant could assert a plausible innocent explanation for his behavior, this would not preclude the police from investigating the possibility that defendant was planning some type of criminal activity. As the defendant concedes, the police need not rule out every innocent explanation for suspicious behavior in order to justify an investigatory stop. E.g., United States v. Thomas, 863 F.2d 622, 627 (9th Cir.1988).

We conclude that the police stop was justified by reasonable suspicion under Terry v. Ohio, and therefore affirm the district court's denial of defendant's motion to suppress and its entry of a judgment of conviction."

## SO ORDERED.

---

1. Defendant further contends that his behavior could be construed as innocent 'girl watching,' citing Frank Loesser's immortal number 'Standing on the Corner' from Most Happy Fella (1956) ('Brother, you can't go to jail for what you're thinking/Or for the "Ooooh" look in your eye.').

Research indicates, however, that Mr. Loesser's thoughts on the innocence of 'girl watching' have been limited, if not directly overruled, by more recent Broadway musicals. See, e.g., Stephen Sondheim, 'Pretty Lady,' Pacific Overtures (1976), and accompanying scene.

DAVID A. NELSON, Circuit Judge, concurring.

I concur in all but Part III A of the court's opinion, which deals with an issue I do not think we need to reach.

Under Ohio law, as Part III B of the opinion explains, what distinguishes kidnapping of the first degree from kidnapping of the second degree is failure to release the victim in a safe place unharmed. The defendant in the case at bar pleaded guilty to a charge of attempt to commit a kidnapping which, because it would not have been followed by a release of the victim in a safe place unharmed, would necessarily have qualified as a felony of the first degree. The materiality of the allegation in the indictment regarding failure to release the victim in a safe place unharmed is thus beyond dispute; the allegation cannot be disregarded as mere surplusage.

Where a defendant admits, as this defendant did, that he attempted to kidnap his victim without releasing her in a safe place "unharmed," it seems obvious to me that the offense "presents a serious potential risk of physical injury" within the meaning of those words as used in 18 U.S.C. § 924(e)(2)(B)(ii). Any attempt at kidnapping in which the perpetrator does not intend that his victim be released in a safe place unharmed (and none of the dissent's examples falls in this category) is bound to entail a serious potential risk of injury. It entails such a risk whether or not the perpetrator's intent ultimately happens to be frustrated for one reason or another.

Because the defendant in this case admitted that he did not intend that his victim be released in a safe place unharmed, the attempted kidnapping was one that would carry a serious potential risk of injury even if we answered "no" to the question whether kidnapping by deception carries such a risk *ipso facto*. I therefore see no reason to decide the latter question.

1. The Ohio kidnapping statute reads in relevant part:
(A) No person by ... deception ... shall remove another from the place where he is

MERRITT, Chief Judge, dissenting.

The *en banc* court has made an obvious error of interpretation under governing Supreme Court precedent in this case.

A mandatory minimum 15–year term of imprisonment under the Armed Career Criminal Act, 18 U.S.C. § 922(g), is imposed on any convicted defendant who has three prior convictions for "violent felonies." Section 924(e)(2)(B) defines the term "violent felony" as a felony that "has as an element the ... threatened use of physical force ... or is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another...." The Supreme Court has interpreted the mandatory minimum statute restrictively to mean that the sentencing court may "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143, 2160, 109 L.Ed.2d 607 (1990). The Court explained that in a narrow range of cases in which a statute may provide alternative elements, some of which satisfy the mandatory minimum provisions and others of which do not, the sentencing court may look to the indictment or information and jury instructions to determine whether the jury necessarily had to find the element of "violence" which satisfies the statute. If the conviction in question may be committed without violence under the definition of the offense, then the conviction may not be used for enhancement. Thus, the Court adopted a "categorical" approach, not a specific offense approach.

The question presented in this case is whether the defendant's prior conviction for first degree attempted kidnapping, Ohio Rev. Code § 2905.01, constitutes a "violent" felony for § 924(e), and requires a 15 year mandatory minimum sentence, when the offense at issue criminalizes "kidnapping by deception."[1] Using the categorical approach, this

found or restrain him of his liberty, for any of the following purposes:
(1) To hold for ransom, or as a shield or hostage;

statute does not have as an element the threatened use of physical force because the statute may be violated by means of "deception" as well as by force or threat. Under the deception alternative, some of the ways to violate the statute are violent felonies and others are not. *Taylor* therefore provides that a court should review the indictment to determine whether the defendant was actually convicted of a violent felony.

The defendant here pled guilty to the following charge:

> The ... defendant ... did attempt by force, threat or *deception* [to] remove[ ] Colleen Lally from the place where she was found or restrained her of her liberty *for the purpose of facilitating the commission of a felony or the flight thereafter* and/or terrorizing, or inflicting serious physical harm on Colleen Lally, and/or engaging in sexual activity with Colleen Lally against her will and *failed to release the victim in a safe place unharmed.* (Emphasis added).

The indictment charges that the offense of conviction may have been committed by deception for the purpose of facilitating "the commission of a felony or the flight thereafter," which may be done without violence as defined in the federal mandatory minimum statute.

For example, any one of the following non-violent crimes comes within the Ohio statute and the language of the indictment in this case: The defendant is a pimp and the victim of the kidnapping works for the defendant as a prostitute. The woman agrees to accompany the defendant across state lines after he tells her that they are going from Cincinnati, Ohio to Covington, Kentucky to meet a friend, when in fact his reason for taking her to Kentucky is to engage in prostitution. Unknown to the defendant, the "friend" is an undercover agent and when the defendant and the woman arrive at the friend's home,

they are arrested. In this example, the defendant, by deception, removed the woman from the place where she was found in order to facilitate the commission of prostitution, and he failed to release the victim in a safe place unharmed because he was apprehended before he could release the woman. It is difficult to discern how such a crime could be a "violent felony" which poses "a serious potential risk of physical injury to the victim or another." But these facts fit precisely within the Ohio statute and the language of the indictment. They fit the indictment like a glove and involve no potential for violence whatever.

As a second example, a defendant and his partner-in-crime plan to steal art work from the wall of the defendant's employer's office on a Saturday afternoon when no one is at the office. When they arrive, they discover that the employer's teenage daughter is working at the employer's computer. The defendant decides to lure the daughter away from the office in order to give his partner the opportunity to steal the art work. The defendant offers to take the child, who he knows from previous contacts with him, to the ice cream parlor or another destination. The child agrees, and the defendant persuades the child to stay with him for long enough to give his partner the opportunity to pull off the job. Midway through the heist, however, his partner is apprehended and tells the police where the defendant and the child have gone. The police find the defendant and the child sitting in the ice cream parlor and the defendant is apprehended. In this example, the defendant has, by deception, removed the child from the place where she was found for the purpose of facilitating the commission of the theft. He further failed to release the victim in a safe place unharmed because the defendant was apprehended before he had the opportunity to release the child. I fail to see how either the first example or this theft case could possibly

(2) To facilitate the commission of any felony or flight thereafter;
(3) To terrorize, or to inflict serious physical harm on the victim or another;
(4) To engage in sexual activity ... with the victim against his will;
(5) To hinder, impede, or obstruct a function of government, or to force any action or

concession on the part of governmental authority.
(C) Whoever violates this section is guilty of kidnapping, an aggravated felony of the first degree. If the offender releases the victim in a safe place unharmed, kidnapping is an aggravated felony of the second degree.
Ohio Rev.Code § 2905.01.

be considered one which "presents a serious potential risk of physical injury."

A third example is a case in which the defendant, who is under a court order not to interfere with the custody of his minor child, induces his minor child by deception to leave her mother and live with him. The defendant uses the "kidnapped" child to assist in committing a nonviolent felony such as theft of a check from the mail, and he is arrested during the attempt. There is no violence or potential for violence. Because he was arrested during the offense, the defendant did not "release the child in a safe place unharmed."

In all of these examples, which fit within the Ohio statute and precise language of the indictment in this case, and in many other cases which can be formulated, it is possible for Kaplansky to have been convicted of first degree attempted kidnapping without committing a violent felony as it is defined by § 924(e). Why should he be sentenced automatically to a mandatory minimum based on violence when none of these crimes are violent or involve any "serious" risk of violence?

We are supposed to be bound by *Taylor* to employ the categorical approach and not to look further behind the conviction than the indictment, and we are required to interpret such enhancement statutes strictly. Under the *Taylor* rationale, it seems obvious that Kaplansky could commit the "removal-from-the-place-found" crime charged in the instant indictment without any risk of violence whatsoever. Under these standards, Kaplansky's conviction should not have been used to enhance his sentence.

The court has reached out to sentence the defendant to a mandatory minimum sentence. What has happened here, as has happened so often in our legal history, is that the court has created a legal fiction. It has ordained that a "serious potential" for "violence" must always be "invariably present" and "an inherent aspect of the crime" whenever "by deception a person removes another from the place where he is found." We know as a matter of fact that such deception will not "invariably" lead to violence or create any more risk of violence than many activities we describe as nonviolent. The above set of examples demonstrate that fact. So the court simply creates a legal fiction: "deceptive removal from the place found" equals "violence" because it is always "possible" that it "might" occur.

I would not reach out in this or other cases through the creation of a legal fiction to impose long mandatory minimum sentences. I would not fictionalize "violence," or say as a categorical matter that conduct is "violent" when it is not. In such cases I would leave it up to the district court to arrive at the sentence to be imposed without tying the judge down to a 15 year mandatory minimum sentence. What is the point of enlarging the reach of mandatory minimum sentences through legal fictions? There is no good reason to do so that I can see.

BOYCE F. MARTIN, Jr., Circuit Judge, dissenting.

I join with Judge Merritt in dissent and write separately to add a point of my own. This is a case where Congress and we as citizens are missing the boat. We have today sent a rather ill citizen to the federal penitentiary for fifteen years at an expense in excess of a million taxpayer dollars when in fact he should be hospitalized in a state facility, which obviously the state of Ohio does not have available. In our rush to answer the cry that crime is everywhere, we have again neglected our duty to mentally ill or emotionally disturbed citizens who commit crimes. We have again used expediency over good judgment by incarcerating such citizens in a federal penitentiary with prisoners who possess their full faculties. In no way do I believe that Robert Paul Kaplansky has lived a life of exemplary behavior. I do, however, believe from reading this record that Robert Paul Kaplansky suffers from mental and emotional problems that are better treated through hospitalization or medication. As evidenced by the opinion of Kaplansky's treating psychologist, Dr. DiFranco, Kaplansky will in all likelihood serve his fifteen years at taxpayers' expense, now approaching $25,000 per year and rising, only to return to the same behavior which is caused by his mental disorder. I cannot imagine Con-

gress intended such a wasteful result as that required by the majority's decision today when it enacted Section 924(e). If Congress intended this result, it should have determined that facilities be constructed so that persons like Robert Paul Kaplansky could at least be given an opportunity for reasonable medical assistance, thereby avoiding the tragic circumstances that present him to us as a three-time convicted felon.

I therefore dissent.