UNITED STATES of America, Plaintiff–
Appellee, Cross–Appellant,

v.

Dwight Wade SEATON, Defendant–
Appellant, Cross–Appellee.

Nos. 94–5038, 94–5213.

United States Court of Appeals,
Sixth Circuit.

Submitted Dec. 5, 1994.

Decided Jan. 17, 1995.

Hugh B. Ward, Jr., Office of the U.S. Atty., Knoxville, TN (briefed), for plaintiff-appellee, cross-appellant.

Kim A. Tollison, Federal Defender Services, Knoxville, TN (briefed), for defendant-appellant, cross-appellee.

Before: BROWN, RYAN, and BOGGS, Circuit Judges.

RYAN, Circuit Judge.

The defendant, Dwight Wade Seaton, appeals his conviction for possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), claiming insufficiency of the evidence. The government cross-appeals from the district court's refusal to count the defendant's prior state conviction for grand larceny while in possession of a firearm as a "violent felony" under a provision of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii). We hold that sufficient evidence supported the conviction, and that the defendant's prior conviction was a violent felony.

## I.

On November 11, 1991, Scott Finney, a member of the Pigeon Forge Police Department in Tennessee, spotted an automobile accident scene while on patrol. Finney noticed the defendant leaving the scene of the accident in his pickup truck, and stopped him. Finney suspected that the defendant was intoxicated, and administered a field sobriety test. When Seaton failed the test and tried to walk away, Finney arrested him and placed him in the back seat of the patrol car.

Before towing Seaton's truck, Finney inventoried its contents. In an unlocked tool box that ran along the back of the cab, Finney found a loaded 20-gauge pump shotgun. As Finney returned to the patrol car with the shotgun, Seaton tapped on the car's window to attract Finney's attention. According to Finney, Seaton told the officer that the shotgun belonged to Seaton and asked the officer what he was going to do with it.

Finney also testified that at the police station, he again told the officer he owned the gun and wanted to know what Finney

was going to do with it. The defendant conceded that he asked Finney what would happen to the shotgun, but denied ever stating that he owned the shotgun. On cross-examination, Finney conceded that the defendant's alleged ownership assertions do not appear in Finney's arrest report.

According to Seaton, his brother, Roger Seaton, owned the shotgun. Roger Seaton testified that he owned the shotgun and claimed he purchased it from Tim McClure, who is now deceased. Roger Seaton could not, however, produce a receipt. He testified that he borrowed the defendant's truck a few days before the arrest and placed the gun in the tool box without telling the defendant. The defendant denied knowing that the shotgun was in the tool box. On cross-examination, Seaton admitted that he worked as a carpenter, and that the tool box contained carpenter tools. However, the defendant asserted that he did not drive the truck to work and he borrowed tools from other workers.

The defendant was convicted of violating 18 U.S.C. § 922(g)(1), because he was a felon in possession of a firearm. Before trial, the government notified Seaton that it would seek the mandatory minimum sentence available under § 924(e) because the defendant had three "violent felony" convictions. However, the district court sentenced Seaton to 108 months imprisonment, refusing to apply § 924(e)'s minimum because the defendant only had two prior "violent felony" convictions. The court found that Seaton's conviction for grand larceny while in possession of a firearm was not a violent felony under § 924(e). Both parties timely appealed.

## II.

### Sufficiency of the Evidence

■ The defendant did not move for acquittal under Federal Rule of Criminal Procedure 29. Where a defendant fails to move for acquittal under Rule 29 at the close of the proofs, this court will review an insufficiency of the evidence claim only for manifest injustice. *United States v. Morrow*, 977 F.2d 222, 230 (6th Cir.1992) (*en banc*), *cert. denied*, 113 S.Ct. 2969 (1993).

■ In reviewing a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, (1979). Circumstantial evidence may be sufficient to support a conviction and need not remove every reasonable hypothesis of innocence. *United States v. Stone*, 748 F.2d 361, 362 (6th Cir.1984).

Section 922(g) prohibits "any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... [to] possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." § 922(g)(1), (7). The parties stipulated that the defendant had prior felony convictions; that the shotgun met the statutory definition of firearm; and that the shotgun travelled through interstate commerce. The only question is whether sufficient evidence supported a finding that the defendant knowingly possessed the shotgun.

Seaton argues that he never admitted ownership of the shotgun, and that if he had made such admissions, Finney would surely have placed them in either the arrest report or the "supplemental" arrest report. The defendant contends that his brother's explanation of the shotgun's placement in the truck is unrebutted. Finally, Seaton argues that his questions to Finney are consistent with the defendant's concern for his brother's gun.

■ Here, put simply, the jury believed Finney's testimony regarding the defendant's assertions of ownership of the shotgun. It was justified in doing so. The jurors were entitled to conclude that both the defendant and his brother Roger lied in order to prevent the defendant's conviction. We hold that sufficient evidence supported the finding that the defendant knowingly possessed the shotgun.

## III.

### Armed Career Criminal Act

The district court's interpretation of the Armed Career Criminal Act is reviewed *de novo. United States v. Brady*, 988 F.2d 664, 666 (6th Cir.), *cert. denied,* 114 S.Ct. 166 (1993).

#### a. Violent Felony under the ACCA

A felon who is in possession of a firearm violates 18 U.S.C. § 922(g), exposing the felon to possible sentence enhancement. The ACCA provides in part: "In the case of a person who violates section 922(g) . . . and has *three previous convictions . . . for a violent felony* . . . committed on occasions different from one another, such person shall be . . . imprisoned not less than fifteen years . . . ." § 924(e)(1) (emphasis added). The ACCA defines "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year . . . that . . .
>
> **(i)** has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> **(ii)** is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another* . . . .

§ 924(e)(2)(B)(i), (ii) (emphasis added). If a sentencing court finds that § 924(e) applies, then the defendant's offense level is typically 33 and the criminal history category is typically IV. U.S.S.G. § 4B1.4(b)(3)(B), (c)(3). Here, if § 924(e) applies, Seaton's offense level would be 33, but his criminal history category is VI because that is his criminal history category without the § 924(e) enhancement, and it is greater than the category with the enhancement. § 4B1.4(c)(1).

■ When determining whether a prior felony is "violent" under § 924(e)(2)(B)(ii), the sentencing court should "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor v. United States,* 495 U.S. 575, 602 (1990). The language of § 924(e) refers generally to categories of crimes, not to the particular facts underlying the convictions. *Id.* at 600. This categorical approach also avoids the "daunting" "practical difficulties and potential unfairness of a factual approach." *Id.* at 601. Accordingly, under § 924(e)(2)(B)(ii), we look to the statutory definition of a felony in order to determine whether it falls into the category of those felonies that "involve[ ] conduct that presents a serious potential risk of physical injury to another." However, where a statute broadly defines a felony, the categorical approach still permits a sentencing court to examine "the charging paper and jury instructions" to determine whether the defendant was convicted of a felony with a serious potential risk of physical injury. *See id.* at 602.

Recently, in *United States v. Kaplansky,* we found Ohio's statute on attempted kidnapping by deception to be a violent felony. 42 F.3d 320 (6th Cir.1994) (*en banc*). The defendant in *Kaplansky* argued that a felony involves a serious potential risk of physical injury to another only if the felony "necessarily present[s]" such a risk. *Id.* at 323–24. We rejected that position, reasoning that "this view overlooks the word 'potential' in the 'otherwise' provision of clause (ii), and also misunderstands the nature of the categorical approach." *Id.* Under a categorical approach, "clause (ii) supplements the scope of the term 'violent felony' through its final 'otherwise' provision, by reaching other statutory and common law offenses not covered by clause (i) that generically involve a similarly serious risk." *Id.* We concluded: "Just because actual force or injury may not surface in a particular instance of kidnapping (i.e., in those instances initiated by deception) does not mean that it is not an undercurrent of the offense having the serious *potential* of rising to the surface." *Id.* at 324 (emphasis added).

■ In addition, we made clear that *Taylor* forbids "looking at the actual facts of the prior felony convictions"; beyond the statutory definition, a sentencing court may examine only the charging paper, the jury instructions, and if applicable, the guilty plea. *Id.* at 322–23. In summary, for a § 924(e)(2)(B)(ii) inquiry, a sentencing court must examine the statutory definition of the

felony in question, and determine whether that felony, as a category, involves a serious potential risk of physical injury; injury need not necessarily occur during every instance of the felony. If applicable, the sentencing court may also examine the charging paper, jury instructions, or guilty plea.

### b. Tennessee Grand Larceny

In 1985, when Seaton committed grand larceny while in possession of a firearm, the Tennessee grand larceny statute provided:[1] "Grand larceny is the felonious taking and carrying away [of] personal goods over the value of two hundred dollars...." Tenn.Code Ann. § 39–3–1103 (1982). The possession of firearm statute provided:

> Any person possessing a ... firearm of any character while committing, attempting to commit, or conspiring to commit a felony shall be guilty of a felony, and on conviction thereof shall be imprisoned in the state penitentiary for a term of not less than two (2) nor more than five (5) years.

Tenn.Code Ann. § 39–6–1710(b)(1) (1982). This provision only increases punishment for the underlying felony by imposing a consecutive prison term; it does not create a separate offense from the underlying crime. *See State v. Hudson,* 562 S.W.2d 416, 419 (Tenn. 1978). In *Hudson,* the Tennessee Supreme Court construed the "use" of a firearm enhancement in section 39–6–1710(a), which parallels section 39–6–1710(b). The court explained that the underlying judgment of assault should be revised "by specifying that the assault was 'committed by means of using a firearm, to wit: a pistol.' " *Id.* Thus, in the instant case the defendant was convicted of "grand larceny while in possession of a firearm." *State v. Seaton,* C.C.A. No. 72, 1986 WL 7849, at *5 (Tenn.Crim.App. July 15, 1986).

Tennessee grand larceny comprises the elements of trespass, taking, and asportation. *State v. Houston,* 688 S.W.2d 838, 840 (Tenn.Crim.App.1984). Trespass for larceny purposes is "an offense against the posses-

sion of the owner." *Id.* Asportation is "the slightest movement of personalty by trespass." *Id.* Thus, "[t]he act of a thief in putting an article into his pocket ... is an asportation, even though he may never leave the owner's premises." *Id.*

This definition of grand larceny permits the felony to cover a variety of factual situations. An examination of Tennessee cases reveals that the most common grand larceny case involves a defendant who is also convicted of burglary. That is, the defendant committed a burglary by entering a building, and then committed larceny by taking and carrying away property from inside the building. *E.g., State v. Bohanan,* 745 S.W.2d 892 (Tenn.Crim.App.1987); *State v. Campbell,* 721 S.W.2d 813 (Tenn.Crim.App.1986).

Other Tennessee larcenies have involved using a contract to take and carry away property. In *State v. Wooten,* 693 S.W.2d 923 (Tenn.Crim.App.1985), the defendant promised to install a new roof for a homeowner and the homeowner paid $600 as a first payment. The evidence showed that the defendant never intended to install the roof; he never began work and in fact changed his business's name and phone number when the homeowner tried to contact him. *Id.* at 924–25. The court in *Wooten* upheld the defendant's conviction for grand larceny, pointing out that a statute provided: "If the contract be used merely as the means of procuring possession, with an intent to make a fraudulent appropriation, it is larceny." Tenn.Code Ann. § 39–3–905(a)(2) (1986).

Finally, grand larceny also encompasses those defendants who simply grab store property and run. *State v. Badgett,* 693 S.W.2d 917 (Tenn.Crim.App.1985). In *Badgett,* the court held that the defendant committed larceny, rather than shoplifting, because shoplifting requires concealment. *Id.* at 918–19. The court acknowledged that even though the defendant stole the property from a store, the "peculiar circumstances"

---

1. The Tennessee legislature enacted wholesale recodification and amendments to its criminal code in 1989. For example, crimes such as larceny, embezzlement, and fraudulent conver-

sion, formerly contained and defined in separate sections, are now all classified as the generally defined crime of "theft." Tenn.Code Ann. §§ 39–14–101, 102 (1991).

justified the grand larceny conviction. *Id.* at 919.

We also note that Tennessee's statutory scheme distinguishes larceny from larceny "from the person." § 39–3–1106. Under larceny from the person, "[t]he theft must be from the person; it is not sufficient that the property be merely in the presence of the person from whom it is taken." § 39–3–1106(b)(1). The existence of the larceny from the person statute suggests that larceny cases will tend to exclude the more dangerous situations where the property is taken from an individual.

However, the relevant question here is *not* whether grand larceny is by itself a violent felony; it is whether grand larceny *while in possession of a firearm* is a violent felony. Some guidance can be found in the Supreme Court's explanation of why burglaries tend to involve a serious potential risk for physical injury:

> The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate. And the offender's own awareness of this possibility may mean that he is prepared to use violence if necessary to carry out his plans or to escape.

*Taylor*, 495 U.S. at 588, 110 S.Ct. at 2153. Likewise, when an offender possesses a firearm during a grand larceny—even if he does not ultimately use the firearm—the firearm's very presence creates the possibility—the risk—that the offender will use the firearm if he meets with resistance or is detected. To be sure, if grand larceny as a category includes some nonconfrontational situations, then possessing a firearm during its commission might not necessarily increase the chances that physical injury will occur.

However, when an offender packs a firearm during a grand larceny, it is reasonable to conclude that he does so for a reason, and that whatever his reason, he necessarily believes that the particular larceny he plans to commit is more dangerous than the usual larcenies covered by the definition of grand larceny without possession of a firearm.

And "[j]ust because actual force or injury may not surface in a particular instance" of grand larceny with possession of a firearm, *Kaplansky,* 42 F.3d at 324, we believe that, as a category, that felony presents a serious potential risk for injury.

Consequently, we conclude that the Tennessee felony of grand larceny while in possession of a firearm is a "violent felony" under § 924(e)(2)(B)(ii) because it "involves conduct that presents a *serious* potential risk of physical injury." (Emphasis added.)

### IV.

We **AFFIRM** the defendant's conviction as supported by sufficient evidence, **REVERSE** the district court's refusal to count Tennessee grand larceny while in possession of a firearm as a violent felony under § 924(e)(2)(B)(ii), and **REMAND** for resentencing.