UNITED STATES of America, Plaintiff–Appellee,

v.

Lummie SANDERS, Defendant–Appellant.

No. 95–3759.

United States Court of Appeals, Sixth Circuit.

Argued June 14, 1996.

Decided Oct. 9, 1996.

Joseph P. Schmitz, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Cleveland, OH, for Plaintiff–Appellee.

Donald Krosin (briefed), Debra M. Hughes (argued), Federal Public Defender's Office, Cleveland, OH, for Defendant–Appellant.

Before: KEITH, MERRITT, and SUHRHEINRICH, Circuit Judges.

KEITH, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. MERRITT, J. (p. 862), delivered a separate opinion concurring in part and dissenting in part.

KEITH, Circuit Judge.

Defendant–Appellant Lummie Sanders ("Sanders") appeals his sentence imposed on remand after his conviction on charges of possession of a firearm by a convicted felon and making a false statement in the acquisition of a firearm. For the reasons that

follow, we **VACATE** Sanders' sentence and **REMAND** the case for resentencing.

## I. BACKGROUND

On June 9, 1993, a federal grand jury returned a three-count Indictment against Lummie Sanders, with Counts 1 and 3 charging violations of 18 U.S.C. § 922(g)(1) (felon-in-possession) and Count 2 charging a violation of 18 U.S.C. § 922(a)(6) (false statement in the acquisition of a firearm). Following the return of the Indictment, the government, on July 16, 1993, gave notice of its intention to seek an enhanced sentence under the provisions of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). The government's notice listed as ACCA predicate offenses: (1) a 1986 involuntary manslaughter conviction; (2) a 1973 assault with a dangerous weapon charge; and (3) a 1968 robbery conviction.

The case proceeded to trial on August 16, 1993. The evidence at trial established that Sanders possessed a .12 gauge shotgun in the course of a commercial transaction with a pawnshop known as the Silver Hardware and Loan. During the course of the transaction, Sanders pawned the shotgun on November 24, 1992, and redeemed it on November 30, 1992. The parties stipulated that the shotgun was manufactured outside of the state of Ohio and shipped through interstate commerce prior to November 24, 1992.

Sanders was found guilty on all three counts of the Indictment. After the case was referred for the preparation of a Presentence Report, the district court permitted Sanders to challenge the constitutionality of his 1973 conviction for assault with a dangerous weapon. The district court subsequently found that the conviction was constitutionally invalid due to a defective jury instruction and concluded that the assault conviction could not be used to enhance the defendant's sentence under the ACCA.

Having resolved that Sanders' conviction for assault with a dangerous weapon could not serve as an ACCA predicate, the district court at sentencing refused to impose the fifteen year term required by 18 U.S.C. § 924(e). While refusing to apply the ACCA's enhanced penalty provisions, the trial court did determine that the defendant's 1986 conviction for involuntary manslaughter constituted a "crime of violence" as that term is defined in U.S.S.G. § 4B1.2(1) and used in U.S.S.G. § 2K2.1(a). The court accordingly sentenced Sanders to a term of imprisonment of 37 months, finding under the U.S. Sentencing Guidelines that the appropriate offense level was 20 and that the appropriate Criminal History Category was Category II.

Following Sanders' appeal of his conviction and sentence, and the government's cross-appeal of the district court's refusal to sentence under the ACCA, this Court, in an unpublished opinion, upheld Sanders' convictions on Counts 1 and 2 of the Indictment. *United States v. Lummie Sanders*, 45 F.3d 431 (6th Cir.1994). Sanders' conviction on Count 3, however, was vacated, as the reviewing Court determined that Counts 1 and 3 were multiplicitous. In response to the government's cross-appeal, the Court, on the strength of the intervening decision of the Supreme Court in *Custis v. United States*, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), agreed that the district court "should have counted the 1972 assault conviction in determining whether to sentence under the ACCA." Believing that additional consideration should be given to the question of whether Sanders' 1986 involuntary manslaughter charge could properly serve as a ACCA predicate, the Court remanded the case to the district court for a "ruling on the issue of whether involuntary manslaughter is a violent felony for purposes of the Armed Career Criminal Act."

Following the remand of the case, the district court, on April 13, 1995, heard argument on the issue and each side submitted additional briefs. On May 10, 1995, the district court, after examining case precedent from the Sixth and other Circuits, concluded that the crime of involuntary manslaughter as defined by Ohio law was indeed a violent felony for purposes of applying the enhanced penalty provisions of the ACCA.

Sanders thereafter challenged the constitutional validity of 18 U.S.C. § 922(g), filing a motion on May 22, 1995. The motion was predicated upon the Supreme Court's deci-

sion in *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), where the Court invalidated the Gun–Free School Zones Act, 18 U.S.C. § 922(q). After the government filed a response in opposition, the district court held that "the teachings of *Lopez* [did] not apply to 18 U.S.C. § 922(g)(1)" and denied Sanders' motion.

Sanders was resentenced on July 3, 1995. Having determined that Sanders' three prior violent felony convictions subjected him to sentencing under the ACCA, the court applied the corresponding guideline provision, U.S.S.G. § 4B1.4, finding under that provision that the appropriate offense level was 33 and the criminal history category was IV. After concluding that it did not have the authority to grant Sanders' oral request for a downward departure pursuant to U.S.S.G. § 4A1.3, the court sentenced the defendant to a term of imprisonment of 188 months, the low end of the sentencing range. A timely notice of appeal was filed on July 3, 1995, the day sentence was imposed.

## II. DISCUSSION

Sanders presents three arguments on appeal. First, he contends that his involuntary manslaughter conviction cannot constitute a violent felony because the Ohio involuntary manslaughter statute allows misdemeanors to serve as a predicate for convictions. Next, Sanders asserts that the district court erred by not finding that Section 4A1.3 of the United States Sentencing Guidelines permits a district court to depart below a minimum criminal history category of IV for armed career criminals. Finally, Sanders argues that 18 U.S.C. § 922(g) is constitutionally invalid.

### A. *Involuntary Manslaughter in Ohio is a Violent Felony*

█ The Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), prescribes an enhanced penalty for a person who violates 18 U.S.C. § 922(g) (being a felon in possession of a firearm) and who has three previous convictions for "violent felonies." Title 18 U.S.C. § 924(e)(2)(B) defines a violent felony as

any crime punishable by imprisonment for a term exceeding one year ... that—(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another ...

In *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court prescribed a "categorical approach" for determining whether a particular crime constituted a "violent felony" as that term is defined by 18 U.S.C. § 924(e)(2)(B)(ii). Under this categorical approach, sentencing courts are required to focus on the statutory definition of the crime charged rather than the actual facts of the individual's prior conviction. *Id.* at 602, 110 S.Ct. at 2160. According to the Supreme Court, this approach avoids the impracticability and unfairness of allowing a sentencing court to engage in a broad factfinding inquiry related to a defendant's prior offenses. *Id.* at 601, 110 S.Ct. at 2159–60. Only in a narrow range of cases where a statute broadly defines a felony, does the categorical approach permit a sentencing court to examine the charging papers and jury instructions. *United States v. Seaton,* 45 F.3d 108, 111–12 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2012, 131 L.Ed.2d 1011 (1995).

█ This Circuit has had numerous opportunities to apply the categorical approach enunciated in *Taylor.* We have repeatedly held that in order to constitute a violent felony under this approach, a defendant's conduct must generally be of the type that presents a serious risk of injury to another. *See Seaton,* 45 F.3d at 111–12 (noting that "for a § 924(e)(2)(B)(ii) inquiry, a sentencing court must examine the statutory definition of the felony in question, and determine whether that felony, as a category, involves a serious potential risk of physical injury"); *United States v. Kaplansky,* 42 F.3d 320, 324 (6th Cir.1994) (holding that even though actual force or injury may not have been used in a particular instance of kidnapping, *i.e.,* in those instances initiated by deception, kidnapping was generally the kind of offense that always presented a serious risk of injury

to another); *United States v. Mack*, 53 F.3d 126, 128 (6th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 153, 133 L.Ed.2d 97 (1995) (holding that the crime of sexual battery through deception is a violent felony because it carries with it the ever-present possibility that the perpetrator may have to resort to actual physical restraint to complete the crime).

■ In the present case, the Ohio involuntary manslaughter statute provides:

(A) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony.

(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a misdemeanor.

(C) Whoever violates this section is guilty of involuntary manslaughter. Violation of division (A) of this section is an aggravated felony of the first degree. Violation of division (B) of this section is an aggravated felony of the third degree.

Ohio Rev. Code Ann. § 2903.04. Sanders claims that since § 2903.04(B) provides that misdemeanors[1] can serve as a predicate for involuntary manslaughter convictions, there is no guaranty that a person convicted of involuntary manslaughter would have engaged in conduct that presented a serious risk of injury to another. In addition, a concern was raised at trial that at the time Sanders was convicted, even minor misdemeanors, *i.e.*, offenses that do not carry a penalty greater than a fine of $100.00, could serve as the basis for involuntary manslaughter convictions. *See State of Ohio v. Westfall*, 1991 WL 149573 at *2 (Ohio.Ct.App. July 31, 1991) *overruled by State of Ohio v. Collins*, 67 Ohio St.3d 115, 616 N.E.2d 224 (1993) (finding that minor misdemeanors could serve as the underlying charge in an involuntary manslaughter conviction).

■ However, a close reading of the statute reveals that only deaths which are the "proximate result" of the defendant's unlawful conduct can bring about a conviction under the statute. The Ohio judiciary has strictly adhered to this statutory requirement in convicting defendants of involuntary manslaughter. *See State v. Losey*, 23 Ohio App.3d 93, 491 N.E.2d 379, 382 (1985) (holding that the term "proximate result" in Ohio's involuntary manslaughter statute means that death reasonably could be anticipated by an ordinarily prudent person as likely to result from the defendant's conduct under the circumstances); *State v. Sabatine*, 64 Ohio App.3d 556, 582 N.E.2d 34, 37 (1989) ("The term 'proximate result' used in R.C. 2903.04, involuntary manslaughter, mandates that a person will be criminally responsible for causing the death of another only where the consequences of his conduct are direct, normal, and reasonably inevitable when viewed in the light of ordinary experience."). Accordingly, since the Ohio involuntary manslaughter statute requires that the offender engage in conduct which directly and proximately results in another's death, that conduct must necessarily present a "serious potential risk of physical injury to another."[2]

Indeed, this finding is consistent with a host of authorities from other Circuits which have examined various involuntary manslaughter statutes and have all concluded that the crime of involuntary manslaughter is either a "violent felony" for purposes of § 924(e) or a "crime of violence" for purposes of U.S.S.G. § 4B1.2(1) and 18 U.S.C. § 924(c). *See, United States v. Fry*, 51 F.3d 543, 546 (5th Cir.1995) (involuntary manslaughter conviction based upon defendant's causing death of another by driving under

---

1. Misdemeanors are defined in Ohio as offenses other than felonies that are punishable by imprisonment for a term of less than one year. Ohio Rev. Code Ann. § 2901.02(F).

2. The dissent claims that involuntary manslaughter can involve the "unintended, accidental killing of another" and thus should not be classified as a violent felony. However, this view ignores not only the language of the Ohio involuntary manslaughter statute, which requires death to be a "proximate result" of unlawful conduct, but also relevant Ohio case precedent. As demonstrated by the *Losey* and *Sabatine* decisions, the Ohio courts have long limited the charge of involuntary manslaughter to those instances where the consequences of a defendant's conduct can reasonably be anticipated to bring about the death of another.

the influence is a "crime of violence" within the meaning of U.S.S.G. § 4B1.2(1)(ii)'s "otherwise clause"); *United States v. Moore,* 38 F.3d 977 (8th Cir.1994) (holding that involuntary manslaughter is a crime of violence because it is a crime which "by definition, always results in the unlawful death of another human being . . . [thus] it is a crime in which there inheres the substantial risk that physical force will be used in its commission"); *United States v. Springfield,* 829 F.2d 860, 863 (9th Cir.1987) (finding that involuntary manslaughter is a crime of violence because " 'by its nature' [it] involves the death of another person" and is thus "highly likely to be the result of violence"); *United States v. Sherbondy,* 865 F.2d 996, 1009 (9th Cir.1988) (noting that involuntary manslaughter is assumed to be a violent felony under § 924(e)(2)(B)(ii)). Consequently, the district court was correct in finding that Sanders' involuntary manslaughter conviction could serve as a predicate offense for an enhanced sentence under the provisions of the ACCA.

### B. Downward Departure

■ Sanders also asserts that the district court erred by holding that it did not have the authority, under the U.S. Sentencing Guidelines, to depart from criminal history category IV to category III in order to sentence Sanders to the statutory mandatory minimum sentence of 180 months. Although a district court's refusal to depart downward is not ordinarily appealable when the court is fully aware of its authority to depart, a court's failure to depart downward because it was unaware of its discretion to do so is cognizable on appeal. *United States v. Hall,* 71 F.3d 569, 573 (6th Cir.1995). In this case, the district court specifically noted that if it had the power to depart below criminal history category IV, it would have reduced Sanders' sentence from 188 to 180 months.

An armed career criminal's criminal history category is governed by U.S.S.G. § 4B1.4(c), which provides:

The *criminal history category for an armed career criminal is the greatest of:*
(1) the criminal history category from Chapter Four, Part A (Criminal History),

or § 4B1.1 (Career Offender) if applicable; or
(2) Category VI, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense, as defined in § 4B1.2(1), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a); or
(3) *Category IV.*

U.S.S.G. § 4B1.4(c). The background section thereto provides:

A *minimum criminal history category (Category IV) is provided,* reflecting that each defendant to whom this section applies will have at least three prior convictions for serious offenses. *In some cases, the criminal history category may not adequately reflect the defendant's criminal history;* see § 4A1.3 (Adequacy of Criminal History Category).

■ The emphasized language indicates that a "minimum" criminal history category of IV is mandated for individuals subject to sentencing under 18 U.S.C. § 924(e). *See United States v. Jackson,* 57 F.3d 1012, 1018 at n. 4 (11th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 432, 133 L.Ed.2d 346 (1995) (since the defendant "was properly classified as an armed career criminal, U.S.S.G. § 4B1.4(c)(3) independently required [him to] be placed in Category IV"). However, although the guidelines prescribe Category IV as the "minimum" starting point for the criminal history of armed career criminals, there is nothing in the guidelines which would prohibit a departure below this level. Indeed, the background section to § 4B1.4 not only notes that in some cases "the criminal history category [prescribed] may not adequately reflect the defendant's criminal history" but also makes reference to § 4A1.3. Section 4A1.3 authorizes downward departures when a defendant's criminal history category "over-represents the seriousness of defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3. Consequently, the Sentencing Commission appears to have contemplated departures from the enumerated criminal history category of IV. Such a departure would especially seem appropriate

in this instance where the district court has noted that it would depart if it had the authority to do so. As a result, we remand this case to the district court to allow it to make the necessary findings of fact and conclusions of law which would justify a departure below criminal history category IV.

### C. Validity of 18 U.S.C. § 922(g)

█ Finally, Sanders claims that 18 U.S.C. § 922(g) (the felon in possession statute) is unconstitutional based on the Supreme Court's holding in *United States v. Lopez,* — U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). In *Lopez,* the Supreme Court struck down 18 U.S.C. § 922(q) (the Gun-Free School Zones Act) because the Act failed to establish a tie between interstate commerce and possessing a firearm in a school zone. *Id.* at ——, 115 S.Ct. at 1626. Here, 18 U.S.C. § 922(g) incorporates an express jurisdictional element—it applies only to firearms "in or affecting commerce"—that operates to limit its reach to firearm possessions that have an affect on interstate commerce. Thus, § 922(g) clearly does not share the defect which prompted the Court to invalidate § 922(q). *See United States v. Farris,* 67 F.3d 300 (6th Cir.1995) (per curiam) (holding that the rationale of *Lopez* was not applicable to 18 U.S.C. § 922(g) since, unlike 18 U.S.C. § 922(q), that statute contained a requirement that the firearm possession be connected to interstate commerce); *see also United States v. Bolton,* 68 F.3d 396, 400 (10th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996) (citing *United States v. Hanna,* 55 F.3d 1456, 1462 n. 2 (9th Cir. 1995), amended 1 F.3d 1247 (9th Cir.1993)) ("Section 922(g)'s requirement that the firearm have been, at some time, in interstate commerce is sufficient to establish its constitutionality under the Commerce Clause."); *United States v. Bell,* 70 F.3d 495, 497–98 (7th Cir.1995); *United States v. Shelton,* 66 F.3d 991, 992 (8th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1364, 134 L.Ed.2d 530 (1996).

### III. CONCLUSION

For the foregoing reasons the sentence imposed by the district court is **VACATED** and the case is **REMANDED** with instructions that the district court has the authority to depart below criminal history category IV.

MERRITT, Circuit Judge, concurring in part and dissenting in part.

Basically what we have in this case is a draconian sentence of over 15 years for possession of a shotgun. There is no evidence that the defendant committed any offense with the shotgun. I have a serious doubt that involuntary manslaughter—the unintended, accidental killing of another in an automobile accident or otherwise—should be classified as a "crime of violence." Involuntary manslaughter is a crime that can be committed without any intent to harm or any intent to assault or perpetrate a physical injury. Therefore, the reasoning of my dissenting opinion in *United States v. Kaplansky,* 42 F.3d 320 (6th Cir.1994), would appear to apply.